and I understand Mr. Donovan. Yes, there you are on video. Can you hear us? I can hear you fine, Judge. And we can hear you. It's a pleasure to see you, Mr. Donovan. And would you please proceed? I understand you'd like to hold two minutes for rebuttal, is that right? If I may, Your Honor. Please, please proceed. Judge, thank you for allowing me to appear via Zoom. We're in the midst of a trial in the District of Connecticut, but one of the attorneys and one of the witnesses has tested positive for COVID. So instead of arguing from a room in the district court in Bridgeport, I'm arguing from home. And so I appreciate you letting me argue via Zoom, anticipating that I was going to go on to the trial today. Well, we're always happy to accommodate the District of Connecticut in any way. The court's visited the district, I guess, huh? So Taequann Hilliard pled guilty to a plea agreement that said that the parties anticipated that the guideline range was 46 to 57 months. He ended up getting 63 months, six months more than the anticipated guideline range. And the trial judge said, hey, the government and the defense, they were wrong. The guideline range wasn't 46 to 57 months. It was 57 to 71 months. The plea agreement's a little odd, a little bit different from most plea agreements in that most plea agreements require a waiver of the defendant of any sentence at the top of the guidelines or lower. But this one actually was six months higher than the top of the guidelines. So somebody in preparing this plea agreement must have anticipated that maybe the 57-month upper edge of the guideline was going to be exceeded. Now, what I'm arguing is in the particular context of this case, of the plea agreement that was entered into in this case, and of the colloquy at plea that was given in this case, this court can reform the plea agreement. The plea agreement said, if there's an error in the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement. I don't want to withdraw the plea. I don't claim that the government has breached the agreement. If the plea agreement had said, the defendant will not be entitled to withdraw the plea and he will not be permitted to request the court to reform the plea agreement because of any mutual error, if it had said that, well, I would be out of luck. But it didn't. And Pacwan-Hillian didn't draft this plea agreement. So, Mr. Donovan, even assuming we were to accept your argument, which is somewhat novel, I appreciate that, that in case of a mutual mistake, our case law does not foreclose a reformation of the plea agreement. Doesn't the case law regarding contracts say that you reform the agreement to have it memorialize what was, in fact, the shared agreement of the parties? And it seems to me that you're not saying that. You're not saying that the parties had a shared agreement that there would be no appellate waiver, and I'm not sure what you're claiming their shared agreement was. Yeah, their shared agreement was we agreed that the guideline range is 46 to 57 months. Oh, but you also, excuse me, Mr. Donovan, you also said that in the agreement that it was a, quote, non-binding estimate. You also said that, quote, could be wrong, that the estimate could be wrong. So, where's the meeting of the minds with regard to the fact that the guidelines determination was written in stone in the meeting of the minds between these two parties? I just think it's just like any contract. I mean, if Judge Nadiani and I agree that outpages- If I said to you, I think my BMW is worth $100,000, but that's a non-binding estimate, and we'll tie ourselves to a third party's estimate of the value. Do you and I have a contract for the sale of the BMW at a certain price? Well, let me answer that question by asking another question. Judge Nadiani and I decide I'm going to paint his fence, and we both agree that there's 100 square feet of fence to be painted. But through no fault of either of us, it turns out there's 200 square feet. I think any court is going to come in and say, look, you either pay Donovan a little bit more to paint the fence- Your hypo is wrong because of the fact that in your agreement on the fence, you also said, but we're not binding ourselves to our estimate of the size of the fence. That's exactly what this agreement said. More importantly, you're not binding the court. Sure. That is the ultimate agreement of the parties, that they have reached an estimate, but that it is not binding on the court. So here the court looked at it and said that the calculation was different. The agreement contemplates that. So what's being reformed? But I say that the court was wrong. That's a separate argument. I have a big hurdle on that one as well. But I'd say that the court was wrong and that the parties were wrong. Why don't we get right to that? 1B1.2D provides for calculating the guidelines by reference to a two-crime objective. And the crime here is not of destruction. It's tampering with witness. And there were two witnesses specifically identified in the indictment. So it's a two-victim crime. Why is that the end of the argument on your point that there was error here? Because with all due respect, this was not a plea to intimidating witnesses. This was a plea to conspiracy. Conspiracy to tamper with witnesses. Well, I say that he pled guilty to a conspiracy to hinder the grand jury's investigation of his hobby. It's conspiracy to tamper with witnesses in violation of 1512K. Right? And that's the conspiracy statute, the K. Well, there's never just a conspiracy statute in the abstract. It has to be a conspiracy to commit a particular crime. And the crime, the substantive crime that was conspired with respect to was tampering with witnesses. No, what I say that the substantive crime that was conspired to is hindering the grand jury. And he would do that in any way he could. But in this particular case, he did it by means of tampering with two witnesses. Right, right. And that was specifically pleaded in the indictment. So it wasn't as if you didn't know that when you pleaded guilty, when your client pleaded guilty. Well, it was also specifically pleaded in the indictment that the object of the conspiracy was to – into the grand jury and its investigation of the hobbyist. Just a practical question. Do you think once you conspire to intimidate one witness, it's free to conspire to intimidate another one? That's a good question. Well, because the guidelines really only exist to try to provide a practical measure of the crime. Here your client conspired to intimidate not one witness, but two. Yeah, but I mean, the problem with all of this, Judge, the problem with this is the government says he conspired to intimidate two witnesses. I say he conspired to hinder one proceeding. And neither of us, Judge, neither of us is right. We're both wrong. I mean, you can see from the plea colloquy and your own instincts tell you this. What he did was he put these videos up on YouTube, not so much to hinder a grand jury investigation, not so much to intimidate witnesses, but to embarrass them in that netherworld in which they live. Well, counsel, counsel, that's not what he pled to, right? I mean, he allocated to the elements of the offense. So I see the red light's on. You would like to reserve two minutes. Why don't we hear from the government, and then we will come back to you, Mr. Donovan. Thank you, Your Honor. So let's hear from the government.  Thank you, Your Honor. May it please the Court. Nicholas Moskow for the United States. The Court is asking all the right questions in this case. I would like to simply address a number of the arguments made by appellant. First, appellant claimed most plea agreements have an appellate waiver that's tied to the guidelines calculation. Certainly that's correct in one respect. It's tied to the guidelines calculation. The plea agreement in this case contained in the government appendix has an appellate waiver tied to the guidelines calculation as if the defendant were not going to be granted the third acceptance of responsibility point, which is standard practice in the Eastern District of New York. That would lead to a base offense level of 20 and a guidelines range of 51 to 63 months. The high end of that guidelines range, 63 months, was the appellate waiver. You know, Mr. Moskow, I understand that this has to be your argument given the record here, but none of this would have to have been before the court if the guidelines had been accurately calculated in the plea agreement. Do you have an explanation for how the government missed the calculation here? Your Honor, the government was wrong. The government did not appreciate the fact that Section 1B1.2D would in fact account for 1512B based on the number of victims, as the court has indicated, rather than based on the overall conspiracy. There were, and to jump to that point, Your Honor, there were three different conspiracies charged in the indictment in this case. The three conspiracies were conspiracy to violate 1512B, conspiracy to violate 1512C, and conspiracy to violate 1512D. 1512C is tied to a proceeding. That was charged in count four. The defendant pled guilty to count two, which charged a conspiracy to intimidate witnesses rather than a conspiracy to obstruct justice. That distinction is the distinction that leads to a multi-object offense rather than a single-object offense. So should the defendant have pled guilty to count four, his argument that it was a single-object offense would be right. The fact that we're having this discussion, Your Honor, also brings me to this point that makes this appeal interesting in some respects, but also perhaps not meritorious. The claim of error in the plea agreement, and in fact the error that he identifies, is the precise error that the district court identified, and the district court therefore got it right. Should the district court be wrong in the way that the defendant is arguing, there would be no error in the plea agreement, no mutual mistake, and the government would be entitled to have the appeal dismissed by virtue of the appellate waiver. So there's really not a box in which this defendant can fit this appeal. I'm sorry. Can I pause you for a second? Can I just mention, courtroom deputy, I don't think the government's clock has been ticking down. Oh, wow. Sorry. You got a free ride, Mr. Moskow. Don't think you're getting another full ten minutes. I have a little glitch. My apologies. I'll do my best not to take advantage of it. Sorry to break your rhythm there. Can we get it started? Okay. Why don't we run it down just to, I don't know what that was, let's say eight minutes. Yeah. There we go. Thank you, Your Honor. Briefly, just to address Judge Nardini's point that this is a novel argument, it is in some respects, and it may have been the first time counsel made the argument, this court has had a number of opportunities since that time to consider and reject the argument grounded in reformation rather than rescission. Most recently in United States v. Adams, docket number 181219, which was decided April 27th, the defendant made the same argument and the court held that, the court rejected the argument and held that reformation in particular was inappropriate, saying, if such a mistake, the mutual mistake in the guidelines, does not authorize invalidation of the agreement and withdrawal of Adams' plea, restoring the parties to the position they were in before the agreement, still less can it justify the inequitable relief he seeks? Well, presumably you could hypothesize a situation with very different facts here. You could imagine, I suppose, a plea agreement that said, the parties stipulate to guideline range X. This is a foundational assumption of the plea agreement. All else rises and falls upon the validity of our assumption. It is binding on the parties. If for some reason the court takes a different view, it's not binding, and our appellate waiver is, whatever, 63 months. I mean, I suppose you could see then if there were evidence that both the government and the defense engaged in some sort of scrivener's error, and it was apparent that they had always thought it was a different guidelines, lower guidelines calculation. Maybe you had drafts of the plea agreement going back and forth between the parties, and somehow the version that got signed in court was simply an erroneous version. I mean, you can start spinning out scenarios where maybe there's such a thing as reformation after mutual mistake, but you're not saying that that could never happen in any situation. No, Your Honor, merely that that's not the appropriate remedy for the specific flaw that he purports to identify here. It's not whether the remedy is appropriate. It's that here the waiver is conditioned on a particular plea rather than on a particular guideline calculation, as in what I understood to be Judge Nardini's hypothetical, and that right here it's the 63 months is what the waiver rises or falls on. A particular sentence. That's correct, Your Honor. You're exactly right. Thank you. Thank you very much. Thank you, Your Honor. So, Mr. Donovan, you have reserved two minutes for rebuttal if you'd like to proceed, and we will start your timer. Oops. I just lost. Or we'll cut you off. Do we still have Mr. Donovan? We do. Okay. Mr. Donovan, can you hear us? I can, Your Honor. Okay. Please proceed. I thank Mr. Moskow for describing my argument as interesting, although not meritorious, which is much nicer than the government usually describes my arguments. I guess all I can say is, you know, how often does the Court of Appeals write that plea agreements are unique contracts, and we temper the application of ordinary contract principles with special due process concerns, with fairness and adequacy of procedural. I recognize what you're saying, Mr. Donovan, but here the contract, the agreement, ties your waiver to a particular sentence, 63 months. If the court had sentenced you to 71 months, the high end of the new guideline calculation, you wouldn't have an appellate waiver. You'd be able to challenge that, but the court sentenced you to 63 months. What needs to be reformed, given that that is what your waiver was tied to? You know, I made a significant error in calculating the guidelines. The government made a significant error in calculating the guidelines. I think the court was wrong in determining the higher guideline level. Your Honor, in due fairness, let me appeal that wrong decision, because it was based on my error and the government's error. That's all I'm saying. All right. Thank you, Your Honor. Thank you very much, Mr. Donovan. We will take the case under advisement. Thank you to both counsel. We appreciate it.